UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
THE CALIBRE FUND, LLC                                            :
                                                                 :
                        Plaintiff,                               :
                                                                 :
        - against -                                              :    1:08 Civ. 11002 (RJS)
                                                                 :
J. EZRA MERKIN,                                                  :
                        Defendant.                               :    ECF CASE
                                                                 :
---------------------------------------------------------------- x

## APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION AND ORIGINAL COMPLAINT

Plaintiff The Calibre Fund, LLC ("Calibre") brings this action against Defendant J. Ezra Merkin ("Merkin") to prevent the unlawful dissipation of investment fund assets related to the Ponzi scheme orchestrated by Bernard L. Madoff and his investment fund, Bernard L. Madoff Investment Securities LLC.

1.      Calibre has invested over $10 million in Ascot Partners, L.P. ("Ascot"), which is an investment fund operated by Ascot's general partner Merkin. Without Calibre's knowledge, Defendant Merkin transferred Calibre's $10 million investment to the Ponzi scheme operated by Bernard L. Madoff and Bernard L. Madoff Investment Securities LLC.

2.      Calibre seeks to recover for fraud, gross negligence, breach of partnership agreement, and breach of fiduciary duty against Merkin. Calibre intends to pursue these claims in civil litigation or in arbitration, if required by a partnership agreement between Calibre and Ascot.

3.      Pending presentation of Calibre's claims before the appropriate tribunal, Calibre seeks a temporary restraining order and an order to show cause why a preliminary injunction should not issue from this Court to prevent Merkin's dissipation of assets and destruction of documents, and to obtain an accounting of assets controlled by Merkin.

## THE PARTIES

4.  Plaintiff The Calibre Fund LLC is a limited liability company organized under the laws of Delaware with its office in Greenwich, Connecticut. Its members are citizens, for diversity purposes, of Connecticut, Delaware and Pennsylvania.

5.  Defendant Merkin is an individual and resident of New York, New York.

## JURISDICTION AND VENUE

6.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1367 and article 3, section 2 of the U.S. Constitution.

7.  Venue is proper in the Southern District of New York under 28 U.S.C. §1391(a) as the Defendant resides in this district, and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTS

8.  Calibre is a limited liability company that manages investments on behalf of its owners. Effective January 1, 2008, and pursuant to a subscription agreement, Calibre invested over $10 million in a fund called Ascot Partners, L.P., managed by Merkin.

9.  Ascot stated in its subscription materials that it "primarily follows a strategy in which the Partnership purchases a portfolio of large-cap U.S. equities drawn from the S&P 100." Ascot's subscription materials also stated that it "hedged its exposure" by simultaneously purchasing a put option and selling a call option on the portfolio. According to published reports, this is the same "split strike conversion" strategy that Bernard L. Madoff purportedly followed before his Ponzi scheme was uncovered.

10. Ascot's subscription materials, however, contain no hint that Madoff actually was making all the investment decisions for Ascot, and that, in fact, Ascot investors simply were investing with Madoff.

2

11.     To the contrary, Ascot investors thought they were entrusting their money to Merkin. Ascot represented that "all decisions with respect to the management of the capital" of Ascot "are made exclusively by J. Ezra Merkin." The subscription materials note that the success of the partnership "depends to a great degree on the skill and experience of Mr. Merkin." While the subscription materials note that Merkin has the right to use third-party managers, the materials create the impression that Merkin would be actively managing the fund and employing various vehicles to employ the advertised strategy. Nowhere do the materials disclose that the entire fund was simply given to Madoff — a single manager.

12.     In return for his services, Merkin was entitled to an advisory fee. In 2007 alone, Merkin was paid almost $30 million in fees to make investment decisions for the fund and to implement the advertised strategy. Given the historic size of Ascot and upon information and belief, Calibre alleges that Merkin was paid in excess of $100 million in such fees.

13.     Unknown to Calibre, Merkin transferred Calibre's entire $10 million investment — and "substantially all" funds entrusted to Ascot — to Bernard L. Madoff and Bernard L. Madoff Investment Securities LLC.

14.     Merkin concealed and did not disclose that instead of managing the funds contributed by Calibre, Ascot and Merkin acted as a feeder to the Ponzi scheme perpetrated by Madoff.

15.     Merkin's failure to disclose this fact is especially egregious given that he was paid substantial fees to manage the fund when in fact he did nothing. Worse, if an investor wanted to place money with Madoff, according to published reports, Madoff did not charge any advisory fee — he claimed that he was happy merely to earn the trading commissions in his broker-dealer business that were generated by his trades on behalf of clients whose money he managed. In other words, had an Ascot investor wanted Madoff to invest their money, they could have gotten this service for free rather than paying Merkin merely to give the money to Madoff.

16. On Thursday, December 11, 2008, Madoff was arrested and charged with perpetrating a massive securities fraud. According to published reports, Madoff admitted that his investment fund was a fraud and that nearly all of investments had disappeared.

17. That next day, Calibre received a "Dear Limited Partner" letter dated December 11, 2008 from Merkin informing Calibre for the first time that "substantially all" of Ascot's assets were invested with Madoff.

18. The letter from Merkin stated that "[a]t this point, it is impossible to predict what recovery, if any, may be had on these assets."

19. This was the first time that Calibre learned its money in fact was invested with Madoff, not Merkin.

20. In the December 11 letter, Merkin also said that as "one of the largest investors in our fund," he had personally "suffered major losses from this catastrophe."

21. On or about December 12, 2008, Calibre wrote to Ascot demanding that Ascot: (a) confirm that it had frozen its accounts and would not distribute any funds in the next 30 days; (b) provide copies of the most recent audited and unaudited financial statements; (c) provide copies of bank statements, custodian statements, and other account records; (d) confirm what ability Ascot has to satisfy outstanding redemption requests. Calibre asked for a response by Monday, December 15. Neither Ascot nor Merkin responded to Calibre's inquiry.

22. The Third Amended and Restated Partnership Agreement of Ascot Partners, L.P. contains an arbitration provision specifying arbitration in New York, New York in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The Partnership Agreement permits, and does not exclude, equitable or injunctive relief pending that arbitration.

## COUNT 1 – FRAUD

23. Calibre incorporates by reference each of the preceding paragraphs.

4

24. Calibre, without knowledge of the falsity of Merkin's statements and of the material omissions described above, and believing such statements to be true and complete, and in reasonable and justifiable reliance upon the statements and representations made by Merkin, purchased investments in reliance upon the truth and completeness of the statements contained in the written materials including the account statements, financial statements, offering memorandum, and partnership agreement, and other representations made by Merkin. Calibre would not have purchased their investments except for their reliance upon the representations made by Merkin in offering such investments for sale.

25. At the time the statements and representations were made by Merkin, they were false, Merkin knew them to be false, and he intended to deceive Calibre by making such statements and representations. At the time of the false statements, misrepresentations and omissions, Merkin intended that Calibre act on the basis of the misrepresentations and omissions contained in the materials and representations in deciding whether to purchase the investments and Calibre reasonably relied on them to their detriment in making such decisions.

26. Had Calibre known of the material facts which Merkin wrongfully concealed and misrepresented, and the falsity of Merkin's representations, Calibre would not have made any such purchases.

27. Calibre, as a result of their purchases and by reason of Merkin's wrongful concealments and misrepresentations, has sustained damages and has lost a substantial part of its investment, together with lost interest and general and incidental damages in an amount yet to be determined, and to be proven at trial.

28. Merkin's fraudulent acts were willful, wanton and aimed at the public generally. Therefore, Calibre is entitled to punitive damages.

## COUNT 2 – GROSS NEGLIGENCE

29. Calibre incorporates by reference each of the preceding paragraphs.

30. Merkin owed to Calibre a duty: (a) to act with reasonable care in preparing and disseminating the information set forth in written materials including the offering memorandum, partnership agreement, and account statements, and other representations relied upon by Calibre in deciding to purchase the investments; and (b) to use reasonable diligence in determining the accuracy of and preparing the information contained in them.

31. Merkin breached his duty to Calibre by failing to investigate, confirm, prepare and review with reasonable care the information contained in the written materials and other representations and by failing to disclose to Calibre, among other things, the facts alleged above, and in failing to correct the misstatements, omissions and inaccuracies contained in them.

32. As a direct, foreseeable and proximate result of this gross negligence, Calibre has sustained damages and has lost a substantial part of its investment, together with lost interest, general and incidental damages in an amount yet to be determined, and to be proven at trial.

## COUNT 3 – BREACH OF FIDUCIARY DUTY

33. Calibre incorporates by reference each of the preceding paragraphs.

34. Merkin owed fiduciary duties to Calibre.

35. Merkin breached his fiduciary duties to Calibre.

36. The duties expressly assumed by Merkin and owed to Calibre include, among others,

   a. The duty to act with reasonable care to ascertain that the information set forth in the written materials and other presentations communicated to and relied upon by Calibre in deciding to purchase investments was accurate and did not contain misleading statements or omissions of material facts.

   b. The duty to allow individual representatives selling the investments to act with reasonable care to ascertain that the investment opportunity presented to Calibre was suitable and in accordance with their investment goals and intentions by providing to such representatives truthful sales information concerning such investments,

c. The duty to deal fairly and honestly with Calibre.

   d. The duty to avoid placing itself, himself or themselves in situations involving a conflict of interest with Calibre.

   e. The duty to manage Calibre's account and to manage and operate investments exclusively for the best interest of Calibre.

   f. The duty to make recommendations and execute transactions in accordance with the goals, investment objectives, permissible degree of risk and instructions of Calibre.

37. Merkin failed to fulfill his fiduciary duties owed to Calibre in the following respects:

   a. Failing to act with reasonable care to ensure that the information set forth in the written materials and other presentations communicated to and relied upon by Calibre in deciding to purchase the investments was accurate and did not contain misleading statements or omissions of material facts.

   b. Engaging in transactions which resulted in a conflict of interest between Merkin and Calibre whose financial interests Merkin had undertaken to advance, supervise, manage and protect.

   c. Failing to adequately and fully disclose to Calibre the full extent and nature of the conflicts of interest in which Merkin and his affiliates would be engaging.

   d. Profiting and allowing Merkin and their affiliates to profit at the expense of Calibre.

   e. Engaging in transactions that were designed to and did result in a profit to Merkin and his affiliates at the expense of Calibre.

38. The acts of Merkin in breaching his fiduciary obligations owed to Calibre show a willful indifference to Calibre's rights.

39. As a proximate result of Merkin's breaches of his fiduciary duties, Calibre has sustained damages, and has lost a substantial part of its investment, together with lost interest and general and incidental damages in an amount yet to be determined, and to be proven at trial.

40. In addition, Merkin's acts were willful and wanton and aimed at the public generally. Therefore, Calibre is entitled to punitive damages.

## COUNT 4 – BREACH OF PARTNERSHIP AGREEMENT

41. Calibre incorporates by reference each of the preceding paragraphs.

7

42. Calibre and Ascot entered into a valid and enforceable partnership agreement.

43. Calibre is a proper party to sue for breach of the partnership agreement.

44. Calibre performed, tendered performance of, or was excused from performing its obligations under the partnership agreement.

45. Merkin breached the partnership agreement.

46. Merkin's breach caused Calibre injury and damages.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER
## AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION

47. Calibre incorporates by reference each of the preceding paragraphs.

48. Calibre will suffer irreparable harm if Merkin is not temporarily restrained and preliminarily enjoined from distributing his own assets or any remaining investment fund assets in an unfair and inequitable manner and from destroying any documents or other evidence of his misconduct. Based on Defendant Merkin's statement that "substantially all" of Ascot's assets were invested with Madoff, the distribution or further dissipation of Ascot's remaining assets will lead to harm that is imminent and injury that is irreparable, not speculative or remote.

49. Calibre has no adequate remedy at law. Both Ascot and Merkin are in grave financial peril and may not be able to satisfy a judgment at the end of a trial or arbitration. Furthermore, Madoff has claimed insolvency. Because Merkin has not provided any information, Calibre has no knowledge of Merkin's current financial condition or the precise status of Calibre's own $10 million investment. It is therefore impossible to predict what recovery, if any, may be had from Merkin's assets. Unless restrained, Merkin may transfer away what assets exist today to satisfy redemption requests or a money judgment.

50. Calibre will likely succeed on the merits of its claims or, alternatively, has raised sufficiently serious questions going to the merits and the balance of hardships tip decidedly in its favor.

51. The injury that Calibre faces far outweighs the injury that would be sustained by Merkin as a result of injunctive relief.

52. Injunctive relief would not adversely affect public policy or public interest.

53. Plaintiff is willing to post a bond.

### PRAYER FOR RELIEF

Plaintiff Calibre respectfully requests that the Court grant the following relief:

54. An Order temporarily restraining Merkin, his agents, servants, employees and attorneys and all persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise, and each of them from unfairly distributing remaining assets in an unfair and inequitable manner or from transferring any assets outside the ordinary course of business;

55. An Order requiring Merkin, within the next ten days, to provide a verified accounting of Ascot's and his own assets and liabilities to identify remaining funds and facilitate the orderly resolution of anticipated disputes concerning the ultimate distribution of the assets of Merkin, Ascot and affiliates;

56. An Order temporarily restraining Merkin, his agents, servants, employees and attorneys and all persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise, and each of them from destroying or concealing documents to allow for the efficient and just prosecution of this action;

57. An Order to show cause why a preliminary injunction, against the same persons and restraining and requiring the same activities, should not issue.

58. Any other and further relief as to this Court seems just and proper.

Dated: December 18, 2008
New York, New York

Respectfully submitted,

SUSMAN GODFREY LLP

*[signature]*

Harry P. Susman
William Christopher Carmody
Jacob W. Buchdahl
Arun S. Subramanian
Attorneys for The Calibre Fund, LLC
SUSMAN GODFREY LLP
654 Madison Ave., 5th Floor
New York, NY 10065-8404
(212) 336-8330

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
THE CALIBRE FUND, LLC

              Plaintiff,

   - against -                                 1:08 Civ. 11002

J. EZRA MERKIN,

              Defendant.

-------------------------------------------------------- x

## **WRITTEN CERTIFICATION PURSUANT TO FED. R. CIV. P. 65(b)(1)(B)**

19.    I am an attorney for Plaintiff The Calibre Fund, LLC. I certify that I made the following efforts to give notice to the adverse party and his attorney:

a. On December 17, 2008, in the afternoon, I called Gary Mennitt, Esq., counsel for Merkin, and informed him of the substance of the injunctive relief requested in this application.

b. On December 17, 2008, in the evening, I spoke with counsel on the telephone and reaffirmed that his client was not willing to enter into a consent order, and that we would file this application on December 18, 2008. Counsel informed me that he was available for a conference on the afternoon of December 18, 2008.

c. On the morning of December 18, 2008, pursuant to our conversation, I emailed the papers in support of this application to counsel for Merkin.

Executed on December 18, 2008

                                                         _____
                                                         Jacob W. Buchdahl